IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
Case No. 14-CR-175-01-RJA

UNITED STATES OF AMERICA

v.

LISA MILLER,

    Defendant.

**DEFENDANT LISA MILLER'S *AMENDED* MOTION FOR PRE-TRIAL RELEASE AND INCORPORATED MEMORANDUM OF LAW**

NOW COMES, Defendant Lisa Miller, by and through Counsel, and requests that this Court set conditions of pretrial release for the reasons set forth herein. The Government has advised they oppose the setting of conditions of release pending trial. Ms. Miller respectfully submits that the Government cannot prove by clear and convincing evidence that Ms. Miller presents a danger to the community. In addition, the Government cannot prove by the preponderance of the evidence that Ms. Miller presents a risk of flight. Lastly, the Government cannot satisfy its burden of showing by the preponderance of the evidence that no condition or combination of conditions would reasonably assure Ms. Miller's presence at future proceedings and trial. Even giving the Government the benefit of a presumption that no condition or combination of conditions would reasonably assure Ms. Miller's presence at future proceedings, see 18 U.S.C. § 3142(e)(3), the evidence Ms. Miller will present at the mandatory

1

detention hearing will rebut any presumption and will militate strongly against pre-trial detention. In addition, the conditions set out below will guarantee the appearance of Ms. Miller at all future proceedings and trial and ensure the safety of any other persons and the community. In support of this position, Ms. Miller submits the following:

**STATEMENT OF CASE**

1. On or about September 19, 2014, Ms. Miller was indicted on conspiracy and international kidnapping charges pursuant to 18 U.S.C. § 371 and 18 U.S.C. § 1204, respectively. DE 1, 41.

2. The Government alleged that "[o]n or about September 22, 2009 . . . [Ms.] MILLER, with intent to obstruct the lawful exercise of parental rights, did knowingly remove, and aid and abet the removal of, a child . . . from the United States." DE 41. All charges in this case derive from Ms. Miller's alleged act of taking her biological daughter, "IM,"[1] to Nicaragua in violation of a custody order previously entered in Vermont, United States.

3. After voluntarily surrendering, Ms. Miller was taken into custody and arrested in the Southern District of Florida in January 2021. *See* Minute Entry dated 01/27/2021. Ms. Miller had not been charged and was not on probation or parole in 2009 or at any time prior to 2009.

---

[1] We use pseudonyms to protect the identity of the minor child—though the minor child has now reached the age of eighteen.

2

4. Ms. Miller was transferred to this District in February 2021. *See* Minute Entry dated 02/17/2021.

5. The Court held an arraignment hearing on February 26, 2021 during which defendant "waived a detention hearing at th[at] time [but] reserved the right to revisit if circumstances change." *See* Minute Entry dated February 26, 2021 (DE 263).

6. Ms. Miller is currently in custody with no set trial date. Based on representations made by the Government, it now appears the jury trial will not occur until some undetermined date in 2022 or thereafter.

## **ARGUMENT**

The release or detention of a defendant pending trial is governed by 18 U.S.C. § 3142. Pursuant to 18 U.S.C. § 3142(f), the "judicial officer shall hold a hearing to determine whether any condition or combination of conditions . . . will reasonably assure the appearance of such person as required and the safety of any other person and the community[.]" Also, per 18 U.S.C. § 3142(g), "[t]he "judicial officer <u>shall</u>, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning" the following: (1) the nature and circumstance of the offense charged; (2) the weight of the evidence against the person; (3) the history and

characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. *See* 18 U.S.C. § 3142(g)(1)-(4) (emphasis added).

### A. <u>18 U.S.C. § 3142(g) FACTORS AS APPLIED TO ADDITIONAL FACTS</u>

Ms. Miller hereby respectfully requests a detention hearing at which she will show the following with respect to the factors enumerated in 18 U.S.C. § 3142(g)(1)-(4) which include:

(1) the nature and circumstances of the offense charged,

(2) the weight of the evidence,

(3) the history and characteristics of the person, and

(4) the nature and seriousness of the danger to any person or community.

The pending charges in this matter are not violent in nature. Ms. Miller has not prior violent conduct.

As argued in a prior filing (DE 285 and 286), at trial Ms. Miller will show that her actions as alleged were as a result of her reasonable belief that her daughter was in danger of domestic (child) abuse by Ms. Miller's former partner, Janet Jenkins.

The history and characteristics of Ms. Miller, as relevant in 18 U.S.C. § 3142(g)(3), are discussed in greater detail below.

Ms. Miller went to the United States embassy in Nicaragua in January, 2021 to surrender herself on the charges for which she is currently incarcerated. Her daughter, who is over the age of 18 and emancipated from any parental custody issues, was with Ms. Miller. When she arrived at the Embassy, Ms. Miller identified herself, and indicated that she was there to surrender and consented to returning to the United States to answer the charges in the W.D.N.Y. Indictment which was approved by a federal Grand Jury on April 24, 2015. Ms. Miller went to the embassy that first day at about 8:30 a.m. and spoke with several U.S. embassy personnel, but they did not place her in custody. Instead, Ms. Miller was told to return the next day, after she had been at the U.S. embassy. The next day, Ms. Miller again went to the United States embassy in Nicaragua to turn herself and stayed for about twelve hours. She was told she was arrested but released on her own recognizance. Ms. Miller was still unable to surrender at the U.S. embassy in Nicaragua, and was sent to stay at a hotel near the embassy and told to remain nearby until the U.S. Government could arrange for her return to the United States. She stayed in a hotel and then a house for approximately eleven days until the Government arranged a flight for her return to the United States. Two days prior to the flight to the U.S., Ms. Miller's passport was returned to her. Ms Miller voluntarily stayed and then met the agents at the airport for the return flight to the U.S. Ms. Miller took an

American Airlines flight to Miami, and was without any escort from the Government from the time when she first went to the U.S. embassy until she boarded and later departed the plane almost two weeks later. When the plane arrived in Miami, the flight crew asked all of the other passengers to remain on the plane until Ms. Miller exited. When Ms. Miller deplaned the aircraft in Miami, she was met at the gate by five United States marshals who placed her in custody. If Ms. Miller had wanted to flee, she had almost two weeks between the time she first appeared at the U.S. embassy in Nicaragua until she boarded the plane to Miami to change her mind and try to escape custody. She had no marshals, police, or other government officials detaining or monitoring her during any of that time. Ms. Miller was then and is now steadfast in her commitment to appearing in court to face the pending charges.

As of present, Ms. Miller is experiencing serious health issues while in custody that require specialized and monitored medical care. Ms. Miller has Hashimoto's, which is an auto-immune disease that results in significant deterioration of the thyroid. While Ms. Miller is receiving some medication , her Hashimoto's has not been adequately or correctly managed by jail facility personnel, including the time at which her medication is administered. Incorrect management is resulting in an impaired ability to think and concentrate, which is currently affecting her ability to prepare for trial. Ms. Miller is also suffering

from hearing loss, likely because of the mismanagement of her condition. In addition, Ms. Miller is in Menopause and her endocrinologist has reviewed her progesterone and estrogen levels, both of which are at abnormal levels. While Ms. Miller understands the difficulties managing medical care in correctional facilities, if Ms. Miller's health continues to deteriorate, she will not be physically or mentally able to withstand a multi-day trial. Upon information and belief, on trial days, Ms. Miller will have to wake up around 4:30 a.m. for transport to Court, and after a full day of Court, will not return to the facility until late in the evening. With her current medical difficulties, Ms. Miller will be incapable of cogent participation at trial.

Lastly, Ms. Miller does have a history of drug or alcohol abuse. However, she does not currently consume or abuse substances, and has not for many years, nor does she have any prior misdemeanor or felony convictions. Ms. Miller has limited financial resources. The paramount concern in Ms. Miller's life is raising her daughter, IM, who presently resides in the United States, in Virginia (as discussed further below). The fact that Ms. Miller voluntarily surrendered to United States officials and that IM permanently resides in the United States (among other circumstances discussed herein) irrefutably demonstrates that Ms. Miller is not a flight risk and that she poses no danger to any other person or the community at large.

## B. SETTING CONDITIONS PURSUANT TO 18 U.S.C. § 3142(c)

Ms. Miller hereby submits that the following conditions will reasonably assure her appearance in future proceedings and the safety of any other person and the community pursuant to 18 U.S.C. § 3142(c).

First, if released, Ms. Miller will remain in the custody of designated third-party custodians, Mr. and Mrs. Shank (the "Shanks" or the "Shank family"),[2] both of whom have agreed to assume supervision of Ms. Miller and to report any violation of her release conditions to the Court. The Shank family is a Mennonite family residing in Rochelle, Virginia (north of Charlottesville). The residence includes a few acres of farmland and greenhouses; the Shanks have indicated that Ms. Miller would reside in a small bedroom on the ground level of the main residence. The Shank family owns and operates a small family farm operation on the property as well as a produce stand (where IM currently works). The Shanks have several children but no minor children presently reside on their property. Neither Mr. Shank nor Mrs. Shank have any (1) prior convictions, (2) substance abuse issues, or (3) indications of domestic violence. Moreover, the Shanks have had no prior association or affiliation with Ms.

---

[2] A Declaration signed by Mrs. Shank, and consented to Mr. Shank, is attached hereto as **Exhibit 1**. Mr. and Mrs. Shank are willing to testify at the detention hearing if needed. They are also willing to take an oath to abide by the conditions set forth by the Court; they do not view abiding by the Court's conditions and directives, and vowing to do so, as a conflict with their faith.

8

Miller or IM, and did not assist Ms. Miller in any way vis-à-vis the pending charges. The Shanks agree to strictly adhere to any condition set by this Court, and are not concerned with the public's opinion for doing so. *See* 18 U.S.C. § 3142(c)(1)(B)(i).

Second, Ms. Miller has gainful employment opportunities and will actively seek employment as a condition of her pre-trial release. Indeed, Ms. Miller has an employment opportunity on the Shanks' farm, if permitted by this Court. *See* 18 U.S.C. § 3142(c)(1)(B)(ii).

Third, Ms. Miller agrees to abide by any specified restrictions on personal associations, place of abode, and travel. She asks only for authorized exceptions for access to family, medical care, legal counsel, and religious ceremonies. *See* 18 U.S.C. § 3142(c)(1)(B)(iv).

Fourth, if the alleged "victim" in this case is IM, the biological daughter of Ms. Miller, she will not be harmed in any way. IM currently in Virginia and works for the Shanks (farming and working the produce stand). Ms. Miller and IM, who is now eighteen years of age, are very close. They voluntarily returned to the United States together albeit at separate times. Thus, given the circumstances, it would be senseless for Ms. Miller to avoid all contact "with the alleged victim of the crime." The "alleged victim" is an adult who wishes to remain in contact with her biological mother absent contrary direction from this

9

Court. To the extent IM intends to offer testimony at trial, Ms. Miller will adhere to any directive of the Court in terms of contact and communications with IM regarding the judicial proceedings.³ *See* 18 U.S.C. § 3142(c)(1)(B)(v).

And if the Government asserts that Janet Jenkins is the "alleged victim," Ms. Miller has not had contact with Ms. Jenkins prior to or since the return to the United States. Ms. Miller will agree not to have any contact or communication with Ms. Jenkins who claimed to have parental rights to IM, though those rights have now expired as IM is over the age of 18 years of age.

Fifth, Ms. Miller will report on a regular basis to any designated law enforcement agency, pretrial services agency, or other agency designated by this Court. *See* 18 U.S.C. § 3142(c)(1)(B)(vi).

Sixth, Ms. Miller will abide by any specified curfew. This will be monitored, in part, by the third-party custodians (the Shank family). *See* 18 U.S.C. § 3142(c)(1)(B)(vii).

Seventh, Ms. Miller does not and will not possess or own a firearm or any other dangerous weapon. Based upon information and belief, the Shank family does not own or possess a firearm, destructive device, or any other dangerous weapon—except that Mr. Shank may own a gun passed down by his

---

³ The Shanks do not have any issue with Ms. Miller visiting with IM.

grandfather that is not operational and which will not be accessible by Ms. Miller.  *See* 18 U.S.C. § 3142(c)(1)(B)(vii).

Eighth, Ms. Miller does not and will not consume alcohol or use any narcotic drug or controlled substance as defined in 21 U.S.C. § 802 *et se*q.  *See* 18 U.S.C. § 3142(c)(1)(B)(ix).

Ninth, Ms. Miller is willing to submit to any available medical, psychological, or psychiatric treatment recommended by the Court.  *See* 18 U.S.C. § 3142(c)(1)(B)(x).

Lastly, Ms. Miller agrees to return to custody for specified hours following release from employment, schooling, or any other limited purposes (such as house arrest).  *See* 18 U.S.C. § 3142(c)(1)(B)(xiii).

In sum, Ms. Miller is willing to satisfy any condition that is reasonably necessary to assure her appearance as required by this Court and to assure the safety of any other person and the community.  *See* 18 U.S.C. § 3142(c)(1)(B)(xiv).

## **CONCLUSION**

When considering the various factors in 18 U.S.C. § 3142, the Government cannot show that Ms. Miller is either a flight risk or a danger to the community. To the contrary, the conditions proposed above, singularly or in combination, and the evidence to be adduced at the detention hearing discussed above will ensure the appearance of Ms. Miller at all future proceedings and trial and the

safety of any person (including the Shanks and IM) and the community. For the foregoing reasons, Ms. Miller respectfully requests a pre-trial detention hearing, or, in the alternative, that the Court grant her Motion for pre-trial release *ex mero motu*.

By: s/ Raymond J. Dague      s/ R. Daniel Boyce

| | |
|---|---|
| Raymond J. Dague | R. Daniel Boyce |
| New York Bar No. 1242254 | **NEXSEN PRUET, PLLC** |
| **Dague & Martin, P.C.** | 4141 Parklake Avenue, Suite 200 |
| 4874 Onondaga Road | Raleigh, North Carolina 27612 |
| Syracuse, New York 13215 | (919) 653-7825 |
| (315) 422-2052 | (919) 653-0435 (facsimile) |
| (315) 474-4334 (facsimile) | dboyce@nexsenpruet.com |
| rjdague@daguelaw.com | |
| | *Pro Hac Vice* Admitted |

ATTORNEYS FOR DEFENDANT

# CERTIFICATE OF SERVICE

I, R. Daniel Boyce, hereby certify that on 15th day of October, 2021 a true and correct copy of the foregoing was electronically filed with the Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

JAMES P. KENNEDY, JR.
United States Attorney
PAUL J. VAN DE GRAAF
Special Assistant U.S. Attorney
P.O. Box 570
Burlington, VT 05402
Paul.van.de.graaf@usdoj.gov

MICHAEL DIGIACOMO
Assistant U.S. Attorney
U.S. Attorney's Office
138 Delaware Avenue
Buffalo, NY 14202
michael.digiacomo@usdoj.gov

/s R. Daniel Boyce
_____
R. Daniel Boyce
NEXSEN PRUET, PLLC
4141 Parklake Avenue, Suite 200
Raleigh, North Carolina 27612
(919) 653-7825
(919) 653-0435 (facsimile)
dboyce@nexsenpruet.com

*Pro Hac Vice* Admitted