IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

   v.                    14-CR-175-01-RJA

LISA MILLER,

       Defendant.

---

## GOVERNMENT MEMORANDUM IN SUPPORT OF
## PROPOSED JURY INSTUCTIONS

  The United States files this memorandum in support of the proposed jury instructions filed this same day. The bulk of the proposed jury instructions track language Judge Arcara used to instruct the jury in the trial of co-defendant Philip Zodhiates, who was charged with the same offenses as Ms. Miller. At that trial, Judge Arcara relied heavily on language from Judge Sands' *Modern Federal Jury Instructions*. This memorandum focuses on the proper charge for the affirmative defense the defendant has noticed.

  The affirmative defense in 18 U.S.C. § 1204(c)(2) contains few words. It excuses the conduct of a defendant "fleeing an incidence or pattern of domestic violence." To aid the jury in its deliberations, the government urges the Court provide the proposed jury instruction, which is adapted from Judge Sands' instruction, *Modern Federal Jury Instruction* 42-22. The proposed instruction provides additional guidance to the jury not included in the model instruction. Judge Sands' instruction largely tracks the statutory language. The government's proposed instruction outlines that statutory language in two elements and defines a few terms,

principally "domestic violence" in light of the developing case law. The proposed instruction's two elements are 1) proof of domestic violence, not merely a "reasonable belief" that domestic violence occurred and 2) the domestic violence being the reason for the kidnapping. The proposed instruction then defines domestic violence as a crime involving physical or sexual abuse not other forms of harm.

### A. Proof of Domestic Violence

The jury instruction should be guided by the plain meaning of the statutory text, which turns on actual "domestic violence." Moreover, the use of the terms "incidence" or "pattern" corroborates that the domestic violence has occurred. The Court should not add a reasonable belief element into the statute. To begin with, Judge Sands' model instruction does not add this element.[1] Congress could have applied the defense when the defendant "was fleeing *what the defendant reasonably believed was* an incidence or pattern of domestic violence," but it did not. Courts should not read in words that Congress left out. *See Bostock v. Clayton County*, 140 S. Ct. 1731, 1738 (2020); *United States v. Ressam*, 553 U.S. 272, 274 (2008); *United States v. Edwards*, 834 F.3d 180, 192 (2d Cir. 2016). The word "reasonable" appears in another

---

[1] The affirmative defense appears aimed principally at circumstances different from those present in this case. Here, a family court had the duty and the power to assess and remedy allegations of physical or sexual violence by a parent against a child. Indeed, Lisa Miller raised concerns about her child's behavior during the family court proceedings, and the court explicitly rejected Miller's suggestion that Janet Jenkins had acted inappropriately with her child. Such family court oversight is lacking when the domestic violence is inflicted on an adult spouse or partner. Similarly, a child could be the victim of domestic violence before family court proceedings are initiated. In both circumstances, the fleeing parent would obstruct the parental rights of the parent inflicting the violence, but would do so for a statutorily protected reason, i.e. to protect against violence that could not be remedied by legal process. Where the family court has already dealt with allegations of violence against a child, the affirmative defense should not be defined in a manner that allows a defendant to relitigate matters addressed by the family court judge.

affirmative defense in this statute but is absent in the domestic violence affirmative defense. 18 U.S.C. § 1204(c)(3); *Russello v. United States,* 464 U.S. 16, 23 (1983) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion") (citations and internal quotations omitted).

Allowing Miller to avoid criminal liability based solely on her "reasonable" belief would create an unjustified loophole in the statutory language and structure. Miller should not be allowed to satisfy the defense by relying on a mistaken belief about domestic violence. Reading into the statute a mistake of fact or reasonableness standard goes beyond the statutorily defined offense and limits criminality in ways the drafters did not intend or specifically state.[2]

---

[2] At the time of the 1993 passage of 18 U.S.C. § 1204, a number of states recognized domestic violence as a defense to the crime of parental kidnapping, a criminal offense in all fifty states at the time. Some of these defenses included a reasonableness element. *See, e.g.,* Fla. Stat. Ann. § 787.03(6) (2000) ("This section shall not apply in cases where a spouse who is the victim of any act of domestic violence or who has reasonable cause to believe he or she is about to become the victim of any act of domestic violence... seeks shelter from such acts or possible acts and takes with him or her any child 17 years of age or younger") (enacted in 1988); Minn. Stat. Ann. § 609.26 Subd. 2(2) (2000) ("It is an affirmative defense if a person charged . . . reasonably believed the action taken was necessary to protect the person taking the action from physical or sexual assault") (enacted in 1984 and amended in 1988); Cal. Penal Code § 278.7(b) (1999) (excluding from liability a person "with a right to custody of a child who has been a victim of domestic violence who, with good faith and reasonable belief that the child, if left with the other person, will suffer immediate bodily injury or emotional harm") (enacted in 1996; originally enacted in 1984 as Cal. Penal Code § 277). However, many states worded the affirmative defense just like Congress elected to do in § 1204, further demonstrating that the lack of a reasonableness element was intentional. *See, e.g.,* 720 Ill. Comp. Stat. Ann. 5/10-5(c)(3) (1993 & Supp. 2000) ("It shall be an affirmative defense that . . . [t]he person was fleeing an incidence or pattern of domestic violence.") (enacted in 1984); *see also* Mo. Ann. Stat. § 565.160(3) (1999) (enacted in 1988); R.I. Gen. Laws § 11-26-1.1(b)(3) (1994) (enacted in 1988).

There is a dearth of caselaw addressing the affirmative defense. The weight of the authority, however, supports the government's position. The Seventh Circuit in *Nixon* addressed both the reasonable belief issue and the definition of "violence."[3] The court described the defendant's position on appeal:

> Nixon submits, however, that the judge made a legal error by limiting her to showing physical (including sexual) misconduct toward her or her daughter. She wanted to argue that both she and S. suffered emotional, psychological, and financial abuse from G.G.—or at least that she reasonably believed that she had suffered these kinds of abuse, even if objectively she had not. She wanted to argue, for example, that G.G. injured her emotionally by selling the house in which they had resided during their marriage and that G.G. often belittled her.

*United States v. Nixon*, 901 F.3d 918, 919-20 (7th Cir. 2018). Judge Easterbrook rejected this view of the affirmative defense. He noted, the statute "speaks of 'domestic violence' rather than abuse more generally—and it requires the defendant to show *real* domestic violence, not

---

[3] The trial judge included reasonable belief language in the jury charge. The court's charge was as follows:

> The defendant contends that even if the government has proved that she committed the offense of international parental kidnapping, she did so fleeing an incidence or pattern of domestic violence. A defendant who commits this offense but flees an incidence or pattern of domestic violence should be found not guilty.
>
> You are instructed that domestic violence includes physical and sexual abuse, but does not include purely emotional or psychological abuse. A child who suffers physical or sexual abuse at the hands of a parent or guardian is a victim of domestic violence.
>
> If the defendant proves that it is more likely true than not true that she reasonably believed that an incidence or pattern of domestic violence had occurred or would occur and flees because of that incidence or pattern, then you should find her not guilty.

The reasonable belief aspect of the charge was not explicitly addressed on appeal because the defendant was convicted.

just a belief that violence occurred." *Id* .[4] The court went on to find support for its interpretation in the statute's structure, which is designed to avoid re-litigating child custody decisions.

> Indeed, we could not equate "violence" with "abuse" without converting every child-kidnapping prosecution into a replay of the child-custody proceedings, in which the defendant would try to relitigate the domestic-relations case by showing that he or she really should have received custody. Yet § 1204 is designed to take the outcome of the domestic-relations case as a given. It provides that the loser in a child-custody proceeding must accept the decision (subject to appeal within the state system) and may not spirit the child across an international border. Allowing an "abuse" defense would defeat that function by effectively subjecting the child-custody decision itself to review in the criminal case.

*Id.*

The Eleventh Circuit also declined to read reasonable belief into the domestic violence affirmative defense. In rejecting evidentiary arguments, the Eleventh Circuit held that the domestic violence affirmative defense "says nothing about fleeing based on a *reasonable belief* about an incident or pattern of domestic violence."

> The text of § 1204(c) . . . says nothing about fleeing based on a *reasonable belief* about an incident or pattern of domestic violence. Morcombe's state of mind—and any effect that V.M.'s statements had on it—was thus immaterial to his affirmative defense. The testimony from third parties relating V.M.'s statements to them was therefore either inadmissible as irrelevant or, as the district court found, because Morcombe's actual intention was to prove the truth of the matter asserted (that V.M. had suffered domestic violence). In either case, the statements were inadmissible.

---

[4] *Nixon* has an unusual post-appeal history. After the Seventh Circuit affirmed the conviction, the district court granted a new trial based on misconduct by the trial judge. The government choose not to retry the matter, presumably in light of the sentence already served by the defendant.

*United States v. Morcombe*, 787 Fed. Appx. 581, 583-84 (11th Cir. 2019) (emphasis in original).[5]

In the only Second Circuit case touching on the affirmative defense, *United States v. Ly*, 507 Fed. Appx. 12 (2d Cir. 2011), the district court did not include reasonable belief in the jury instruction and the court of appeals did not address reasonable belief. There, the district court in Brooklyn provided the jury with the following instruction:

> The defendant in this case has raised the defense that at the time of the removal of the child from the United States, the defendant was fleeing an incidence or pattern of domestic violence. Incidence means the occurrence of.
>
> I instruct you that it is a defense to the charge in the indictment that the defendant was fleeing an incidence or pattern of domestic violence if the defendant proves that this was the case by a preponderance of the evidence. As I told you, the defendant has the burden of proving this defense by a preponderance of the evidence. To prove something by a preponderance of the evidence means to prove only that it is more likely true than not true. It is determined by considering all of the evidence and deciding which evidence is more convincing.
>
> In determining whether the defendant has proven this defense, you may consider the relevant testimony of all witnesses, regardless of who may have called them, and all the relevant exhibits received in evidence, regardless of who may have produced them. If the evidence appears to be equally balanced, or you cannot say upon which side it weighs heavier, you must resolve this question against the defendant. However, it is important to remember that the fact that the defendant has raised this defense does not relieve the government of the burden of proving all of the elements of the crime as I have defined them, that the child was previously in the United States, that the defendant removed the child from the United States and that the defendant acted with the intent to obstruct the lawful exercise of parental rights of Tony Lam. These are things that the government still must prove beyond a reasonable doubt.

*United States v. Ly*, 798 F. Supp. 2d 467, 479 (E.D.N.Y. 2011).[6]

---

[5] The district court in *Morcombe* did not include reasonable belief in its jury instruction. It simply referenced the text of the statute and defined "domestic violence" consistent with state law in the state where the violence allegedly occurred.

[6] During deliberations, the jury asked for a definition of domestic violence, which the trial judge declined to provide, urging the jury to use its common sense. The district court later granted a post-

In sum, the text of the statute, the structure of the statute, and the weight of the limited caselaw supports the government's proposal that the defense must prove by a ponderance "domestic violence."

## B. The Cause of the Removal from the United States

The plain text of the affirmative defense is limited to a defendant "fleeing" domestic violence. This language means that the domestic violence causes of the defendant's removal of the child. Domestic violence can take many forms, some more serious than others. While the language of the text alone will provide guidance to the jury and the government has not found other cases addressing this facet of the defense, the government urges the Court to provide additional guidance, interpreting "fleeing" as the proposed instruction does.

The affirmative defense thus has both a conduct element and an intent element. A defendant should not get the benefit of the defense where the removal was not motivated by protecting from abuse. One can easily posit a case where a defendant's child experienced some relatively minor domestic violence, such as an incident of severe corporal punishment, but that violence was not the reason the defendant removed the child from the country. Indeed, the government believes that Lisa Miller kidnapped her child not to protect her from some sort of domestic violence but to "protect" her from having a lesbian parent. If Miller's reason

---

conviction motion for a new trial based on the defense's claim that it was error not to provide further guidance about the meaning of "domestic violence." The Second Circuit held that the trial court did not abuse its discretion in the granting of a new trial. Moreover, the case was not retried because the defendant pleaded guilty to a related false statements offense.

for kidnapping the child was her opposition to same sex parenting, she should not be able to satisfy the affirmative defense.

### C. Defining Domestic Violence

It does not appear that the parties have a serious disagreement about the definition of domestic violence for the affirmative defense. The *Nixon* court held that the statute does not reach psychological or financial "abuse" but is limited to physical or sexual violence. 901 F.3d at 919-20. Miller appears to agree with this limitation. Doc. 286. The Second Circuit in *Ly* did not reach the issue but expressed doubt about the broader scope of the definition of domestic violence proposed by the defendant there, which included more than physical and/or sexual violence. 507 Fed. Appx. at 13 n.1. A district judge in the Southern District of New York recently summarized the case law and followed the Seventh Circuit's *Nixon* lead. In refusing to expand domestic violence beyond physical and sexual abuse, the courted noted the *Ly* court's skepticism of expanding domestic violence to include emotional, psychological or financial abuse. *United States v. Helbrans*, 2021 WL 4778525, at 19 (S.D.N.Y. Oct. 12, 2021).[7]

The proposed instruction also limits the scope of the domestic violence to criminal conduct. The defendant should not be free to argue that lawful interactions between a parent and a child are physical or sexual violence without a tether to law. The proposed instruction adopts the language of 18 U.S.C. § 921(a)(33) (A)(ii), where Congress defined "misdemeanor

---

[7] The *Helbrans* court did not end up instructing the jury on the affirmative defense at trial because the defendants abandoned it.

crime of domestic violence" in the context of the crime of knowingly possessing a firearm after a conviction for such a crime. This definition of domestic violence refines the scope of offenses, such as assault and sexual abuse. The jury should also be instructed on the crime that Miller will be relying on for the affirmative defense. For example, if Miller is relying on a claim that Jenkins physically abused IMJ in Virginia, the jury should be instructed on the scope of Virginia crime of child abuse. The crime of child abuse differs from the crime of assault or battery involving an adult. Caring for a child often involves physical contact between the parent and the child, which the child might find "unwanted." Grabbing an adult by the hand to force the adult in an unwanted direction might be an assault, while grabbing the hand of one's child to force the child in an unwanted direction is not an assault, but rather appropriate parenting. Hugging an adult without consent is different from a parent hugging a child without "consent." Finally, many parents believe that minor corporal punishment fits within the span of proper parenting. Physical punishment of a child does not necessarily constitute a criminal offense. Virginia law defines the crime of child abuse as follows:

> Any parent, guardian, or other person responsible for the care of a child under the age of 18 who by willful act or willful omission or refusal to provide any necessary care for the child's health causes or permits serious injury to the life or health of such child is guilty of a Class 4 felony. For purposes of this subsection, "serious injury" includes but is not limited to (i) disfigurement, (ii) a fracture, (iii) a severe burn or laceration, (iv) mutilation, (v) maiming, (vi) forced ingestion of dangerous substances, and (vii) life-threatening internal injuries.

Va. St. 18.2-371.1. Miller's reliance on the affirmative defense must be based on actual crimes not her own views about appropriate contact between a parent and child.

In conclusion, the Court should adopt the proposed instruction and charge the jury that the defense has the burden of proving an incidence or pattern of actual domestic violence

and the domestic violence causing the removal of the child. Further, the jury should be charged that domestic violence means a crime involving physical or sexual abuse.

DATED:	Buffalo, New York, December 3, 2021.

                              TRINI E. ROSS
                              United States Attorney


BY:	s/PAUL J. VAN DE GRAAF
      Special Assistant U.S. Attorney
      MICHAEL DIGIACOMO
      Assistant U.S. Attorney
      United States Attorney's Office
      138 Delaware Avenue
      Buffalo, New York 14202
      (716) 843-5885
      Michael.Digiacomo@usdoj.gov